PATRICK WILLIAMS, as Executor, etc , Respondent, *v.* THE BROOKLYN ELEVATED RAILROAD COMPANY, Appellant.

An elevated railroad structure in a city street is inconsistent with its character as an open public highway, and, in the absence of the consent of the abutting owners to its erection, violates their rights as such, although the title to the soil of the street is in the municipality, and the railroad company, in erecting the structure, acted under both legislative and municipal authority.

In an action, therefore, brought by an abutting owner to recover damages occasioned by such a structure, the question whether it is an interference with the plaintiff's right as an abutting owner, is not one for the jury. It is for that body to ascertain the amount of damages, being governed by the evidence in determining the amount, and so it is for it to determine whether substantial or nominal damages should be awarded; but the question whether the structure is or is not one which the legislature or municipality may authorize as against an abutting owner, is beyond its province.

In such an action damages were only claimed for the six years prior to the commencement of the action which was in November, 1886, and the jury were expressly limited to this time. It appeared that the company's charter was granted in 1879, and in that year the columns were erected in front of plaintiff's premises; the road was not completed until 1885. The court refused to charge that no damages were recoverable for any depreciation of rental value of plaintiff's property resulting from the contemplated building of defendant's road. or from rumors of such building. *Held,* no error; as it was a request to charge an abstract proposition.

Also *held,* that the court properly submitted to the jury the question as to whether the obstruction of the street during the progress of the work diminished the rental value of the houses on plaintiff's premises; proof having been given to support plaintiff's contention on that point.

The court permitted the jury to award damages arising from plaintiff's inability to rent his property from time to time during the building of

defendant's road and after its completion, where such loss could be traced to the operations of defendant. *Held*, no error.

Requests to charge as to matters upon which the court has already charged, or which embody abstract or immaterial propositions, or relate to questions of evidence and the credibility of witnesses, may be properly denied.

Plaintiff's counsel, in summing up the case, after referring to the "utter disregard of the rights of the private citizen by corporations," was permitted to read, under objection and exception, an article from a newspaper, which purported to be an account of the killing of a boy by coming in contact with an electric wire, negligently left swinging for months from a pole in a city street, and which commented on the neglect and incompetency of the city officials. *Held*, error; that it was the duty of the court to interpose and prevent the reading.

While it is the privilege of counsel, in addressing a jury, to comment upon every pertinent matter of fact bearing upon the questions the jury have to decide, this privilege does not justify the introduction of matters wholly immaterial and irrelevant, and which the jury have no right to consider, and where such comments are permitted after proper objection, and they tend to prejudice the minds of the jury, this is legal error.

*It seems*, it is the function of the trial court to instruct the jury upon the law, and where counsel, in summing up, undertake to read the law to the jury, the court may properly interpose to prevent it, but if it permits this to be done and the law is correctly laid down in the extract read, it does not constitute legal error or furnish a ground of exception.

*It seems*, however, such a practice should not be encouraged.

*It seems*, also, the reading by counsel from a decision in another case, for the purpose of bringing before the jury the facts of that case, or the amount of the verdict, or the comments of the judge on the facts, to influence the jury in deciding upon the facts in the case on trial, or in fixing the amount of damages, may not be permitted.

(Argued March 7, 1891; decided March 20, 1891.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 18, 1890, which affirmed a judgment in favor of plaintiff, entered upon a verdict and affirmed an order denying a motion for a new trial.

This action was brought to recover damages to plaintiff's premises in Brooklyn, caused by the erection and operation of defendant's elevated railroad upon the street in front of them.

The facts, so far as material, are stated in the opinion.

*William N. Cohen.* for appellant.　Permitting the reading of the article from the newspaper was error and sufficient ground for granting a new trial. (*Koelges* v. *G. L. Ins. Co.,* 57 N. Y. 638 ; *Ins. Co.* v. *Cheever,* 36 Ohio St. 201; *Rolfe* v. *Rumford,* 66 Me. 564; *Dickerson* v. *Burke,* 25 Ga. 225.) It was error to allow plaintiff's counsel in summing up to read from the decision of the Court of Appeals in the case of *Lahr* v. *Metropolitan El. R. R. Co.* (*Reich* v. *Mayor, etc.,* 12 Daly, 72; *Gould* v. *Moore,* 8 J. & S. 387 ; *Tuller* v. *Talbott,* 23 Ill. 357; *Ryan* v. *P. M. Co.,* 57 Hun, 253 ; *Sprague* v. *Craig,* 51 Ill. 288 ; *Lesser* v. *Perkins,* 39 Hun, 341 ; *Porter* v. *Choen,* 60 Ind. 388; *Allaire* v. *Allaire,* 39 N. J. L. 113 ; *People* v. *Anderson,* 44 Cal. 65.) The maxim of *proxima non remota causa spectatur* should have been applied to prevent the jury from deducing an erroneous measure of damages. (S. & R. on Neg. 624, § 750 ; *S. N. Co.* v. *Thoburn,* 7 S. & R. 411 ; *Shrank* v. *S. N. Co.,* 14 id. 71 ; *S. N. Co.* v. *Freedley,* 6 Whart. 109 ; *S. N. Co.* v. *Farr,* 4 W. & S. 362 ; *Chase* v. *N. Y. C. R. R. Co.,* 24 Barb. 273 ; *Greene* v. *N. Y. C. R. R. Co.,* 12 Abb. [N. C.] 124 ; *In re B. R. R. Co.* v. *Phillips,* 55 Hun, 165 ; *Newman* v. *M. E. R. Co.,* 118 N. Y. 618; *Easterbrook* v. *E. R. Co.,* 51 Barb. 94; 3 Suth. on Dam. 411.) Evidence as to vacancies was entirely irrelevant ; and the charge upon the subject was erroneous. (*Van Schaick* v. *Sigel,* 9 Daly, 383.) The court erroneously refused to charge that the question whether the elevated railroad at one particular place is, or is not, a perversion of the use of a street, is a question for the jury. If there had been no perversion of the street as a street there can be no recovery. (*Story* v. *N. Y. E. R. R. Co.,* 90 N. Y. 122, 170 , *Ireland* v. *M. E. R. R. Co.,* 20 J. & S. 450, 451; *N. Y. C. Co.* v. *Mayor, etc.,* 104 N. Y. 36 ; *Lahr* v. *M. E. R. R. Co.,* Id. 289.) The court erred in refusing to charge that defendant had, at the time of the construction of its road, legislative and municipal authority for the construction on Grand avenue, as the same has been proved to be constructed. (*Powers* v. *M. R. Co.,* N. Y. L. Jour. May 31, 1890.) The court erro-

neously refused to charge that expert testimony is to be received with caution as it is an exception to the general rule to permit witnesses to express opinions and draw conclusions. It is the duty of the jury to draw conclusions from the evidence and form opinions upon the facts proved. (*Ferguson* v. *Hubbell*, 97 N. Y. 507, 514; *Reed* v. *McConnell*, 181 id. 270, 276; *Clark* v. *Fisher*, 1 Paige, 171, 173; *Norman* v. *Wells*, 17 Wend. 136, 161.) The court erred in refusing to charge that if the evidence on both sides is equally balanced, the verdict of the jury must be for the defendant. (*Stearns* v. *Field*, 90 N. Y. 640; *N. Y. G. Co.* v. *Gleason*, 78 id. 503.) A trial judge is bound to instruct the jury on each proposition of law submitted to him by counsel bearing upon the evidence. (*Chapman* v. *McCormick*, 86 N. Y. 479; *Zabriskie* v. *Smith*, 13 id. 322; *Forster* v. *People*, 50 id. 598, 601.) Incompetent evidence was erroneously admitted. (Taylor on Ev. § 239; Best on Ev. § 252; *Pond* v. *M. E. R. Co.*, 112 N. Y. 186, 188; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 id. 98; *Archer* v. *N. Y., N. H. & H. R. R. Co.*, 106 id. 589; *Cowley* v. *People*, 83 id. 464.)

*A. B. Boardman* for respondent. The defendant's structure was an unauthorized use of the street, and the plaintiff was entitled to recover the damages caused by it. (Laws of 1835, chap. 132; *Lahr* v. *M. E. R. Co.*, 104 N. Y. 288.) It was proper to show that the conveyance to the plaintiff's son-in-law was intended as a mortgage, and that the title to the property in fact remained in the plaintiff. (*Dean* v. *M. R. Co.*, 30 N. Y. S. R. 81.) The evidence to show what effect the road had on travel and business in the street, what houses had stood vacant, what annoyance the road caused occupants of the houses, the appearance of the structure, and its effect on the street during snow storms, was proper. (*Drucker* v. *M. R. Co.*, 106 N. Y. 158; *Kane* v. *N. Y. E. R. Co.*, 125 id. 164.) In an action of trespass the measure of damages is the loss of rental up to the time of trial; that is, the difference between the rent received and what the property would have

rented for if the road had not been there. (*Pond* v. *M. E. R. Co.*, 112 N. Y. 186.) The exceptions to the charge are not well taken. (*Lahr* v. *M. E. R. Co.*, 104 N. Y. 288.)

ANDREWS, J. The *Story* case and those which have followed it have settled the doctrine that the placing of an elevated railroad structure in a city street is inconsistent with its character as an open public street, and in the absence of the consent of the abutting owners to the erection, violates their rights as such, notwithstanding the title to the soil of the way is in the municipality and although the railroad company in erecting the structure acted under both legislative and municipal authority. In view of these decisions the contention of the counsel for the defendant that he was entitled to go to the jury upon the fact whether the structure of the defendant was an interference with the right of the plaintiff as an abutting owner, depending upon the question whether it did or did not obstruct the street, cannot be sustained. There may be little and possibly no injury occasioned by the erection, or the existence of the road; it may be a positive advantage to his property, depending on the particular circumstances. Where the property owner sues for damages the jury is to ascertain and award them, and they are to be governed by the evidence in determining the amount and whether substantial or nominal damages only shall be awarded. But it cannot be left for the jury to say whether the structure is or is not one which the legislature or the municipality may authorize as against an abutting owner, upon the theory that it is a question of fact and not of law, depending upon the extent of the interference in a particular case with the public right of passage or with the enjoyment by the abutting owners of their premises. This disposes of one class of exceptions taken on the trial.

The original charter of the defendant was granted in 1874, but the work of constructing the road was not commenced until 1879, and was not completed until 1885, and an exception was taken to the refusal of the court to charge that no damages were recoverable for any depreciation of rental value

of the plaintiff's houses resulting from the contemplated build-
ing, or rumors of the contemplated building, of the defendant's
road.

There was no claim to recover for any damages except for
the six years prior to the commencement of the action, viz. :
From November 20, 1880, to November 25, 1886. The jury
were expressly limited by the court to this time, and under
this ruling it was quite immaterial whether the rumors that the
road was to be built, existing prior to the actual commence-
ment of the construction, did or did not affect the rental value
of the houses completed before 1879, between the time of
their completion and the time when the construction was com-
menced, and the court was justified in declining to charge
upon this abstract question. The foundations for the columns
of the road were laid in front of plaintiff's premises in 1879,
and the court properly submitted it to the jury to find whether
the obstruction of the street during the progress of 'the work
by the piers and the deposit of material used in the construc-
tion diminished the rental value of the houses of the plaintiff
during the period of construction, proof having been given
which tended to support the plaintiff's contention upon this
point.

There was no error in permitting the jury to award damages
for loss sustained through the inability of the plaintiff to rent
the houses from time to time, while the work was going on
and after the completion of the road, where such loss could be
traced to the operations of the defendant. The proof to sustain
this claim was not and, from the nature of the case, could not
be very definite or satisfactory, but there was evidence on the
subject, and the matter could not be taken from the jury.
The exceptions taken by the defendant on the trial were
very numerous. There were forty requests to charge made in
its behalf. The charge covered the material questions in the
case, and furnished no ground for any valid exception. The
requests to charge were mainly denied. They either related
to matters upon which the court had already charged, or
embodied abstract or immaterial propositions, or related to

questions of evidence and the credibility of witnesses, the denial of which was not legal error.

We perceive no valid ground for reversing the judgment on the merits, and we should affirm it except for the ruling of the court made during the summing up to the jury.

The counsel for the plaintiff, in his address to the jury, after referring to "the utter disregard of the rights of the private citizens by corporations," proceeded to read from a newspaper, "The New York Tribune," an article headed "Only a Boy Peddler," purporting to be an account of the death of a boy, "a little fellow fifteen years old, a Roumanian, a stranger in this great city (New York), selling collar buttons and pocket combs from a modest tray, to help support his mother and eight brothers and sisters," caused by his touching an electric wire which, the article stated, had been left swinging for months from a pole near which the boy had taken his stand. This was made by the writer the text for comment on the neglect of the city officials in failing to take effective measures to have electric wires placed under ground, and the article concluded with the statement: "It is shameful that where such perils are in question there should be procrastination, shiftlessness and incompetency which would not be tolerated in a private business."

When the counsel for the plaintiff commenced reading the article the defendant's counsel interposed and objected to the reading, and asked the court to prevent it. The court overruled the objection, and the defendant's counsel excepted. The plaintiff's counsel then resumed the reading, and was reminded by the court that the reading was under exception, but the counsel proceeded and read the remainder of the article.

It is the privilege of counsel in addressing a jury to comment upon every pertinent matter of fact bearing upon the questions which the jury have to decide. This privilege it is most important to preserve and it ought not to be narrowed by any close construction, but should be interpreted in the largest sense. The right of counsel to address the jury upon the facts is of public as well as private consequence, for its

exercise has always proved one of the most effective aids in the ascertainment of truth by juries in courts of justice, and this concerns the very highest interest of the state. The jury system would fail much more frequently than it now does if freedom of advocacy should be unduly hampered and counsel should be prevented from exercising within the four corners of the evidence the widest latitude by way of comment, denunciation or appeal in advocating his cause. This privilege is not beyond regulation by the court. It is subject to be controlled by the trial judge in the exercise of a sound discretion, to prevent undue prolixity, waste of time, or unseemly criticism. The privilege of counsel, however, does not justify the introduction in his summing up of matters wholly immaterial and irrelevant to the matter to be decided, and which the jury have no right to consider in arriving at their verdict. The jury are sworn to render their verdict upon the evidence. The law seduously guards against the introduction of irrelevant or incompetent evidence, by which the rights of a party may be prejudiced. The purpose of these salutary rules might be defeated if jurors were allowed to consider facts not in evidence, and the privilege of counsel can never operate as a license to state to a jury facts not in evidence, or to present considerations which have no legitimate bearing upon the case and which the jury would have no right to consider. Where counsel in summing up proceeds to dilate upon facts not in evidence or to press upon the jury considerations which the jury would have no right to regard, it is, we conceive, the plain duty of the court, upon objection made, to interpose, and a refusal of the court to interpose, where otherwise the right of the party would be prejudiced, would be legal error. There are many cases sustaining this conclusion. Among them are *Mitchum* v. *State of Georgia* (11 Geo. 616) ; *Tucker* v. *Henniker* (41 N. H. 317) ; *Rolfe* v. *Rumford* (66 Me. 564).

The reading by counsel in summing up to the jury of the newspaper article " Only a Boy Peddler," was wholly irrelevant to the case. It could have been read for no purpose except to influence the jury against corporations and to lead them, under

the influence of a just anger excited by the incident narrated, to give liberal damages to the plaintiff in the case on trial. The refusal of the court to interfere, under the circumstances of this case, was legal error. The privilege of counsel and the largest liberality in construing it did not authorize such a totally irrelevant and prejudicial proceeding. The counsel also, during the summing up, read a passage from the opinion of this court in the *Lahr* case (104 N. Y. 291), after objection taken by the defendant's counsel had been overruled by the court. It is not important to consider the exception to this ruling, as the appellant is entitled to a reversal for the reason already stated. It may be observed, however, that it is the function of the judge to instruct the jury upon the law, and where counsel undertake to read the law to the jury, the judge may properly interpose to prevent it; but if the judge sees fit to permit this to be done and the law is correctly laid down in the decision or book used by counsel, it would not, we think, constitute legal error or be ground of exception by the other party, although such a practice is not to be encouraged. If, however, the reading from a decision was to bring before the jury the facts of the case decided, or the amount of the verdict, or the comments of the judge on the facts, to influence the jury in deciding upon the facts in the case on trial, or in fixing the amount of damages, then clearly the reading ought not to be permitted.

We think the judgment in this case should be reversed upon the exception taken to the reading of the newspaper article.

Judgment reversed and new trial ordered.

All concur.

Judgment reversed.