Hillsborough, }
Nov. 1, 1904. }

### OLNEY *v.* BOSTON & MAINE RAILROAD.

It is sufficient cause for setting aside a verdict, that counsel was permitted to read in closing argument an excerpt from an opinion rendered in the same case, the natural tendency of which was to induce the jury to believe that the court had expressed an opinion upon a material question which it was the province of the jury to determine as one of fact.

In such case the error is not cured by an instruction to the jury that the question to which the extract related was one for them to decide, in the absence of a specific direction that all reference to the opinion of the court should be disregarded.

An application for the correction of an alleged error in the transcript of the record should be made to the trial court at the time the transfer is made up.

A question of law once decided will not ordinarily be reconsidered in the same case, except upon a motion for rehearing.

CASE, for negligence. Trial by jury and verdict for the plaintiff. Transferred from the September term, 1902, of the superior court by *Stone*, J. The case is the same as that reported in 71 N. H. 427, and the evidence presented by the plaintiff was substantially that submitted at the former trial. The defendants excepted to the denial of their motions for a nonsuit, that a verdict be directed in their favor, and that the verdict of the jury be set aside.

The plaintiff was injured in an attempt to repair a defective arm-hole cover while the locomotive upon which he was employed was in motion. His evidence tended to show that he reported the defect to Sargent, the defendants' foreman, on Saturday, was told that it should be remedied before another trip, and, relying upon that promise, started out on Monday without making an examination to ascertain whether the repairs had been made. The defendants' rules required engineers to inspect their locomotives before each trip, and this the plaintiff customarily did at the close of his day's work.

In his closing argument the plaintiff's counsel spoke as follows, the words in brackets being an extract from the opinion of the court in *Olney* v. *Railroad*, 71 N. H. 427, 433: " He reported the only defect he found in the engine to the proper man, and started out Monday morning relying upon that promise; and, as a matter of law, if he had a right to rely upon that promise,—if he was not guilty of negligence in so doing,—why then he is entitled to recover. It is for you to say. He had a right to rely upon that promise; and if he did rely upon it, you have a right to say

whether he did do all that was expected of him, because that is the law in the state of New Hampshire. [It is urged that the plaintiff was in fault for not ascertaining by inspection immediately before starting that the promised repair had not been made. It was the plaintiff's duty, under the rules, to inspect the locomotive; but he is not, as a matter of law, at fault for performing such duty at the close of the previous day's work instead of immediately before starting out. One object of the inspection duty resting on the plaintiff was to discover defects arising in use. Inspection at the close of a trip would give an opportunity for minor repairs before the next trip. This would be a reason why the time chosen might be found appropriate. The rule relied upon by the defendants must be given a reasonable construction and application. It cannot be construed to render the defendant's employees insurers of the proper condition of all appliances used by them, or to relieve the defendants of liability for the breach of their masters' duty. It may properly be assumed that Olney's inspection of the engine disclosed that it was in proper condition in all respects except the arm-hole cover, and that between the time of his inspection and his next use of the engine no new defect arose; for there is no suggestion of any defect as a cause of the injury, discoverable Monday morning, which was not equally discoverable Saturday evening. The evidence tended to show that Olney inspected the engine, as required by the rule, and discovered that it was not in proper condition for the service required. It was not his duty to make the necessary repair. He reported the defect to the proper person representing the defendants. As the employee had given notice of the defect to the proper officer, whose duty it was to make the repairs, and the impression had been conveyed to him that these would be made, he had the right to assume that they had been made, and to act upon that assumption.] The last sentences are quotations from the law of New Hampshire." An exception was taken, and counsel continued: "That statement is a part of my argument, and is taken from the supreme court of the state of New Hampshire, because they are the ones who decide what is the law." Counsel for the defendants subsequently entered a formal exception to the reading of the foregoing extract, coupled with the intimation that it was the law laid down by the supreme court in the same or a similar case, and the plaintiff's counsel thereupon addressed the jury as follows: "I ask you to disregard anything that I may have said, or you may have understood that I said, in regard to anything I said to you being a quotation from any law of the supreme court in any case. I wish you to consider that what I said about the law was my understanding and my view of the law,—what I understood it to be,—and I do

not want you to give any credit to any statement that I might have made, or you may think I have made, that what I said to you was taken from any opinion of the supreme court. It was merely my view of the law."

*Burnham, Brown, Jones & Warren,* for the plaintiff.

*Oliver E. Branch* and *William H. Sawyer,* for the defendants.

PARSONS, C. J. The portion of the opinion of the court in this case (71 N. H. 427, 433) which counsel for the plaintiff read to the jury in the course of his argument was a discussion of the question whether, upon the facts then presented, the plaintiff was as matter of law guilty of negligence barring his recovery, because of his failure to reinspect the engine before starting on his trip Monday morning. The case was then before the court upon exception to the order directing a verdict for the defendants. In consideration of the questions of law so presented, all inferences of fact which might be drawn from the evidence were treated, for the purposes of the discussion, as found in the plaintiff's favor. The court did not attempt to decide what conclusions ought to be drawn from the evidence, and the language of the court, used with reference merely to what inferences might be drawn, has no application upon that question.

It is not necessary to cite authority in this jurisdiction to the proposition that counsel may not in their argument introduce into the case, for the purpose of influencing the jurors, evidentiary matter which cannot be, or has not been, proved. The question before the jury upon this branch of the case was whether Olney was in fact in fault for not re-examining the engine. The question of law, whether there was any evidence upon which the fact might be found in his favor, was not before the jury or before the trial court. There was no occasion to argue it to the jury, because they could not decide it; nor before the court, because the presiding justice had already decided the question discussed by the supreme court in the plaintiff's favor, by denying the defendants' motions for a nonsuit and a verdict. The effect of reading the extract must have been to mislead and prejudice the jury in favor of the plaintiff, by inducing them to believe that the supreme court had expressed an opinion favorable to the plaintiff's contentions. The opinion of the supreme court on this question, as matter of fact, was incompetent upon the issue before the jury if that court had held or expressed any opinion. Their opinion as matter of law was immaterial so far as the jury were concerned. The court had decided, in the opinion referred to, that upon the evidence presented

at the former trial the case should have been submitted to the jury. At this trial, upon facts understood to be substantially the same, the superior court, in compliance with the opinion of the supreme court, had submitted the case to the jury. The plaintiff in the second trial had the full benefit, therefore, of the prior decision in his favor. But as the matter was presented in argument, it is extremely probable the jury understood that the opinion of the court related to the question before them. If it was not intended that they should so understand, the object in reading the extract is not readily perceived. But the actual purpose of counsel may not be material. If what was done was deliberately and intentionally undertaken for the purpose of misleading the jury, the result would be no more prejudicial than if it was done in the supposed exercise of a legal right.

The error was not cured by the careful and painstaking methods of the presiding judge in submitting the case to the jury. They were properly, carefully, and explicitly told that it was for them to decide whether the plaintiff exercised ordinary care in starting out without reinspection Monday morning. But they were not told to disregard the reference to the opinion of the supreme court, and the instruction did not remove from their minds the information which had wrongfully been laid before them, that in this or a similar case the supreme court thought the employee had in fact a right to assume that the repairs had been made. It is to be presumed that in *Baldwin* v. *Railway*, 64 N. H. 596, and in *Noble* v. *Portsmouth*, 67 N. H. 183, the juries were instructed that the amount of the damages was to be determined by them; but in each case the verdict was set aside because of the statements of counsel in argument of the amounts other courts or juries thought ought to be recovered in such cases. While the counsel may properly state his view of the law in making application of the facts as he claims them to be proved, and perhaps in some cases read the law from the books (a question not decided), such procedure is never permissible when the effect of the reading is " to bring before the jury the facts of the case decided, or the amount of the verdict, or the comments of the judge upon the facts, or to influence the jury in deciding upon the facts in the case upon trial." *Williams* v. *Railroad*, 126 N. Y. 96, 104; *Press Pub. Co.* v. *McDonald*, 63 Fed. Rep. 238,—26 L. R. A. 531; *Arey* v. *DeLoriea*, 55 Fed. Rep. 323,—5 C. C. A. 116.

The plaintiff does not controvert the correctness of the defendants' presentation of the minutes of the argument of counsel as written out by the stenographer. From these minutes it is very plain the jury could not have failed to understand that the case considered by the court was the case then on trial. Olney's name

appears twice in the extract, and the facts disputed at the trial as to whether there was any defect, any notice from Olney to the foreman, and any promise by him to repair, were stated as though settled in the plaintiff's favor. Not only must the jury have thought the case was the same, but they may have inferred that the facts now in dispute were found by the court in the plaintiff's favor, or had been so conceded or determined in some former trial. That such information might have some tendency to influence their conclusion as to which view of the facts in dispute was correct is as plain as the legal error in placing such considerations before them is clear. *Elwell* v. *Roper*, 72 N. H. 254, 257.

The plaintiff's counsel, after arguing and submitting the case without objection upon the record as it was presented, now ask for leave to secure an amendment changing the record. Justice does not require this course for several reasons. If the transcript was erroneous, the time for correction was at the hearing before the trial court when the transfer was made up. The case does not contain a statement of what was said. As it is obvious the exception could not be intelligently considered without knowledge of what was read, the reference to the stenographer's minutes must have been intended to apply to this exception and is an adoption of them as they were then written out, as a correct record. The application is, in effect, a request for this court to direct the superior court to give the plaintiff a new trial upon the question. If this court has any such power, the case does not call for its exercise. Where the complaint is that the court has misunderstood the record, or that some essential fact has been omitted, opportunity for amendment is granted as of course; but that is not this case. The record states that counsel read from a typewritten manuscript prepared by himself. If confusion exists as to the stenographer's notes, the best evidence of what was said would be this manuscript; but the paper has not been offered, nor is it now claimed that the transcript furnished the court differs from the statement so prepared and read. The claim in the plaintiff's brief is that the transcript differs from the original notes, which it is also claimed are incomplete and fragmentary. The failure to offer the best evidence, or to account for its absence, is a sufficient reason why further trial of the question should not be had.

But even if the opportunity for amendment were granted, it would not avail, for the remarks which it is conceded were read, as shown by the imperfect notes, were equally prejudicial with, if not more misleading than, the whole extract. While attentive reading of the whole shows that the court were considering the question of law, the bald statement that the court had held that the employee under the circumstances " had the right to assume " that

the promised repairs would be made, does not suggest the real question before the court and plainly purports to inform the jury of the court's opinion on the question before them. The error was not cured by the request of counsel to the jury to consider what he had read merely as his view of the law, because as a statement of law applicable to the question before the jury it was erroneous and was in terms adopted by the court. Although in other parts of the charge the jury were told, as has been remarked, that the question was for them, they were also told in the charge that if Sargent promised Olney he would repair the defect, "Olney had a right to rely upon the promise." The error into which counsel and court appear to have fallen may perhaps be due to the failure in the opinion to refer at frequent intervals to the precise question which was under discussion. The particular sentence which appears to have been misunderstood,—"as the employee had given notice of the defect to the proper officer, whose duty it was to make the repairs, and the impression had been conveyed to him that these would be made, he had the right to assume that they had been made,"—was a quotation from the supreme court of the United States. In the connection in which it was used, with reference to the question under discussion, it was understood to mean that under such circumstances the employee was not, as matter of law, in fault for relying upon the promise. That it was not intended that the opinion should be understood to lay down the proposition that, as matter of law, the notice and promise to repair constituted due care, seems clear from the further statement that "whether due care, which the plaintiff was required to exercise for his own safety, demanded that he should examine the engine in the morning to ascertain whether the promised repairs had been made, is a question of fact. Upon this question the promise to make the repair before the next trip is evidence. Whether the obligation to exercise care was or was not satisfied by entire reliance upon the foreman's promise, would depend upon all the facts in evidence, and is for the jury." The same idea is again expressed in the next paragraph, in discussion of two cases cited by the defendants, and the discussion concludes: "In this case the evidence of previous failure of the foreman to make repair as promised tends to prove that a prudent man would not have relied upon the promise in this instance." Upon the whole discussion, it now seems that the sentence quoted by counsel as his view of the law, and adopted by the court, cannot reasonably be understood as intended as a statement of law for the guidance of the jury. But if it be assumed that the difficulty arose from lack of definiteness and clearness in the opinion of the court, the interpretation put upon the language by the use made of it is an erroneous statement of the law, and

being made subject to exception and approved by the court, vitiates the verdict. *Harrington* v. *Wadsworth*, 63 N. H. 400; *State* v. *Foley*, 45 N. H. 466. An erroneous view of the law having been given the jury, it is immaterial whether the responsibility for such error is rightly chargeable to counsel, the presiding judge, or the supreme court. In either case the trial was unfair and the verdict must be set aside.

A question of law once decided is not reconsidered in the same case, except upon a motion for rehearing. *Bell* v. *Lamprey*, 58 N. H. 124; *Carter* v. *Jackson*, 58 N. H. 156; *Plaisted* v. *Holmes*, 58 N. H. 619; *Amoskeag Mfg. Co.* v. *Head*, 59 N. H. 332, 337; *Weare* v. *Deering*, 60 N. H. 56; *Adams Academy* v. *Adams*, 65 N. H. 225, 227; *Cox* v. *Leviston*, 66 N. H. 167, 168. A relaxation of this rule because of the public importance of the case, in the absence of a trial or any change in the situation (*Hedding* v. *Gallagher*, 72 N. H. 377), was not intended as an abandonment of the principle. Since the decision in *Olney* v. *Railroad*, 71 N. H. 427, a trial has been had in accordance with the principles there considered to be the law of the case. It is now too late in this case to reinvestigate the questions then decided. Careful comparison of the facts, as presented in behalf of the plaintiff, fail to disclose any new matter fatal to the maintenance of the action under the rules before laid down. The questions decided may be close, and the reasoning adopted may not be entirely satisfactory to the court or to the counsel; but no sufficient reason for their further consideration appears. The plaintiff's case, considered by itself, is stronger rather than weaker as now presented. Whether there is any explanation of the conflict between that case and that which the testimony of the defendants' witnesses and their other proof tends to establish, except the falsity of the witnesses upon one side or the other, was for the jury, whose province it was also to judge who told the truth. This court cannot decide the case. If the plaintiff and his witnesses told the truth, and the inferences which might be drawn from their testimony ought to be drawn, it has been decided the plaintiff was entitled to a verdict. No sufficient reason for a reversal of this conclusion appears.

The exceptions to the refusal to order a nonsuit and verdict for the defendants are overruled. The exception to the course pursued by counsel in argument is sustained. Other exceptions have not been considered.

*Verdict set aside : new trial granted.*

WALKER, J., did not sit: the others concurred.