PEOPLE v. STILWELL.

(Supreme Court, Special Term, New York County. June, 1913.)

1. CRIMINAL LAW (§ 433*)—EVIDENCE.

An unsigned telegram, addressed to accused, a state Senator, charged with bribery, which was claimed by complaining witness to have been sent to him by accused, was admitted in evidence after it was shown that it was receipted in the Albany office of the telegraph company, and was delivered by a messenger to a regular attendant at the gate of the railing at the entrance to the Senate chamber, and the complaining witness testified that he subsequently had telephonic communication with accused, in which accused inquired what the telegram meant. *Held*, that the telegram, if relevant, was admissible in evidence against accused in the bribery prosecution.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1022; Dec. Dig. § 433.*]

2. CRIMINAL LAW (§ 1171*)—TRIAL—IMPROPER ARGUMENT.

Accused, a state Senator, charged with bribery, could not have been harmed by a statement of the district attorney in argument, referring to a remark by accused's counsel as to a conversation between complaining witness and the Governor, that he wished he could tell the jury the advice the Governor gave to accused, where on objection the court stopped the argument and the remark was withdrawn.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3126, 3127; Dec. Dig. § 1171.*]

3. WITNESSES (§ 268*)—EXAMINATION.

On cross-examination of complaining witness in the prosecution of a state Senator for bribery, a letter was read from witness which stated that he inclosed a check for $250 "as per my promise yesterday," when he was asked whether he made any promise to L. "the yesterday" before the letter was written, and answered, "No, sir; that promise was to" accused, when the court, on objection, struck out the answer after "No," and witness was asked, "Then the statement in the letter as to 'my promise yesterday' is inaccurate again?" and witness answered,

"No, sir; it is not; as per my promise to" accused, which answer was stricken out as voluntary. *Held*, that the answers stricken were natural and reasonable, for the purpose of preventing counsel from giving a wrong impression of witness' testimony, and the court could have refused to strike the answers.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 931–948, 959; Dec. Dig. § 268.*]

4. CRIMINAL LAW (§ 675*)—ADMISSION OF EVIDENCE.
    Where sufficient evidence as to a certain event had been admitted, it was not error to exclude other detailed evidence on the same question.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 850, 1607; Dec. Dig. § 675.*]

5. CRIMINAL LAW (§ 448*)—EVIDENCE—CONCLUSION.
    Evidence that accused spoke slowly and wrote rapidly was not improper as a conclusion.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1035–1039, 1041–1043, 1045, 1048–1051; Dec. Dig. § 448.*]

6. CRIMINAL LAW (§ 1137*)—DEMONSTRATIVE EVIDENCE.
    Where accused's attorney did not ratify a suggestion by a juror that certain conversation claimed to have been written down by witness during 13 minutes be dictated to witness, to find out how long it took him to write it, accused could not complain that that was not done.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3007–3010; Dec. Dig. § 1137.*]

7. WITNESSES (§ 337*)—CROSS-EXAMINATION OF ACCUSED.
    Accused may be asked on cross-examination as to any specific act or thing which may affect his character and tend to show that he is not worthy of belief.

    [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1113, 1129–1132, 1140–1142, 1146–1148; Dec. Dig. § 337.*]

8. CRIMINAL LAW (§ 413*)—EVIDENCE—SELF-SERVING STATEMENTS.
    Evidence as to what accused told witness concerning statements made by another to accused about some one having approached such other on behalf of a Senate committee of which witness was chairman was not admissible in a bribery prosecution of a state Senator; statements by accused being incompetent as evidence in his favor.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 928–935; Dec. Dig. § 413.*]

9. CRIMINAL LAW (§ 719*)—TRIAL—ARGUMENT.
    The district attorney may in argument discuss all of the relevant circumstances in evidence in the same manner as other counsel, but cannot comment on circumstances without the evidence.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1669; Dec. Dig. § 719.*]

10. CRIMINAL LAW (§ 165*)—BRIBERY—DEFENSES.
    The fact that the state Senate acquitted a Senator of bribery after hearing the charges would not prevent the Senator's conviction for bribery; Const. art. 6, § 13, providing that even a judgment of impeachment and removal from office shall not exempt the offender from punishment according to law, and article 13, § 2, making official bribery a felony.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 290–298; Dec. Dig. § 165.*]

Stephen J. Stilwell was convicted of bribery, and applies for a certificate of reasonable doubt. Application denied.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Robert M. Moore and James B. McClelland, both of New York City, and William T. Byrne, of Albany, for the motion.

Charles S. Whitman, Dist. Atty., of New York City (Robert C. Taylor, Asst. Dist. Atty., of New York City, of counsel), opposed.

GIEGERICH, J. This application for a certificate of reasonable doubt is made on behalf of the defendant, a Senator of the state of New York, who has been found guilty of the offense of bribery. The application is one of great importance to the defendant, as such applications generally are, and is also one of exceptional importance to the public, because of the character of the crime charged and the power of the office held by the defendant. I have read the entire record, which is voluminous; the stenographer's minutes alone consisting of more than 600 pages. I have examined all the grounds urged on behalf of the application with painstaking care and will discuss them in detail.

[1] There was no error in admitting the unsigned telegram, addressed to the defendant, and claimed by the complaining witness, Kendall, to have been sent by him to the defendant. It was shown that Kendall dictated it, that his secretary sent it from New York to Albany, that it was received in the Albany office of the telegraph company, a copy of the message being preserved and produced, and that it was delivered by a messenger to one of the regular attendants at the gate of the railing of the entrance to the chamber of the Senate, of which the defendant was a member. In addition to all this, there was the testimony of Kendall that he subsequently had a telephonic conversation with the defendant, in which the latter had inquired what he meant by the telegram. The defendant denies that he ever received the message. It needs no argument to show that under such circumstances it was the plain duty of the court to admit the telegram in evidence and leave it to the jury to determine the question of credibility.

Complaint is also made of references to communications made by Kendall to the Governor of the state, which references are contained both in the testimony and in the summing up of the district attorney. When the first of such references appeared in the testimony, no objection was made until after the question was answered, and no motion to strike out was made nor was any ruling by the court asked for. When the matter was again touched upon in the examination, the defendant was asked, "Had you ever had any trouble with him (Kendall) up to the time he accused you to the Governor?" and objection was made to the question as "characterizing," which the court overruled, remarking that everybody knew what was referred to. The record does abundantly show what was meant, and plainly there is no fair ground for an allegation of error in this.

[2] When the counsel for the defendant summed up, he stated to the jury a supposed conversation as taking place between Kendall and the Governor. When the district attorney summed up, he referred to this statement of the defendant's counsel, and said that he wished he could tell the jury the advice the Governor gave to the defendant, but, on objection from the defendant's counsel, was stopped by the court and withdrew his remark. To some extent, this was said in answer

to the argument of the defendant's attorney; but as the court checked anything further, and the remark was withdrawn, it is difficult to see how any harm was done to the defendant.

[3] The claim made that the trial judge should have rebuked the witness Kendall for volunteering testimony is wholly without merit. At the stage of the cross-examination referred to the defendant's attorney had just read Kendall's letter to Lewis, in which Kendall states that he incloses the check for $250, "as per my promise yesterday." Then came the following:

"Q. Did you make any promise to Mr. Lewis 'yesterday' before that letter was written? A. No, sir; the promise was to Mr. Stilwell.
"Mr. Moore: I move to strike that latter part out, if the court please.
"The Court: All after 'no' will be stricken out.
"The Witness: No. Q. Then that statement in the letter as to 'my promise yesterday' is inaccurate again. A. No, sir; it is not. As per my promise to Senator Stilwell.
"Mr. Moore: I move to strike that out.
"The Court: Yes; strike out that remark as volunteered.
"Mr. Moore: And I ask the court to instruct the witness.
"The Court: I will give such instructions to the witness as the court thinks necessary."

It is manifest here that the witness was not seeking to volunteer anything not logically embraced in the subject of inquiry. The answer was only such as any witness would naturally give. That the examining counsel was not disposed to be quite fair to the witness was disclosed the next instant, when he sought to make it appear that the witness had injected something into the letter that had no warrant in fact. In such a situation, the witness was quite within his rights in giving the explanation he did. Not only was there no justification for the attempt of the counsel to secure from the court instructions to the witness as to the manner in which he should give testimony, with the implied censure which would have accompanied such instructions, but the court might well have refused the motion to strike out the witness' explanation, which was entirely relevant and natural and justified. The counsel was seeking to convey a wrong impression to the jury; the witness was only seeking to add a fact necessary to a true understanding of the point under inquiry.

[4] I think the trial court was right in refusing to admit the photographs of the signs placed by the witness Kendall upon his building and containing fuller details of his differences with the New York Stock Exchange. That such differences existed appeared frequently in the evidence, and that the witness had long had a bitter feeling and alleged grievance and had maintained litigation against the Stock Exchange was shown in many places, and it was quite proper not to permit the very bulky record to be still further enlarged by the details of this difficulty.

[5] Error is also alleged to have been committed in the examination of the witness Fields, who claims to have overheard the telephonic conversation between the defendant and Kendall. Over the objection of defendant's counsel Fields was permitted to state that the defendant spoke slowly and that he wrote rapidly. It is claimed that these

words express conclusions; but I do not see how the information sought to be elicited could be asked for or conveyed by the use of terms less objectionable.

[6] Neither do I think any error was committed by the trial judge in failing to follow out the suggestion of one of the jurors that the conversation claimed to have been written down by the witness during the 13 minutes it was being carried on be dictated to the witness, to find out how long it would take him to write it. The attorney for the defendant did not second this suggestion, and ought not to complain now that it was not adopted.

[7] So far as concerns the cross-examination of the defendant, I do not think that the limits permitted by the decisions of the Court of Appeals were transgressed in this case. In People v. Webster, 139 N. Y. 73, 84, 34 N. E. 730, it was said that it is now an elementary rule that a witness may be specifically interrogated upon cross-examination in regard to any vicious or criminal act of his life, and may be compelled to answer unless he claims his privilege, and that a party who offers himself as a witness in a criminal case is not exempt from the operation of this rule. In People v. Hinksman, 192 N. Y. 421, 432, 85 N. E. 676, the rule was stated in different and perhaps broader language, namely, that the defendant may upon cross-examination "be interrogated as to any specific act or thing which may affect his character and tend to show he is not worthy of belief." The cross-examination of the defendant and his witness Lewis was well within the limits permitted by the rule set forth in the cases above cited, and reiterated and applied in other cases too numerous to cite. There are cases in which it may seem that the courts on appeal have not permitted the rule to be followed as broadly as the language in which it has been enunciated would imply it was intended; but those will be found to be cases where the evidence was evenly balanced and where the trial court had gone too far in allowing cross-examination into details. But this is not such a case. It is impossible to read this record without perceiving that the defendant's guilt was abundantly established, and that the conclusion reached by the jury could not have been influenced by any small and debatable item of evidence. It is likewise evident from the record that the learned trial judge did not allow too great latitude in going into details.

[8] I cannot see any force in the argument that the witness, Assemblyman McGrath, should have been permitted to testify to what the defendant had told him concerning statements Kendall had made to the defendant, so the defendant claimed, about some one having approached Kendall on behalf of the Assembly Codes Committee of which Mr. McGrath was chairman. Of course, statements made by the defendant, no matter to whom, were incompetent as evidence in the defendant's favor. People v. Dolan, 186 N. Y. 4, 78 N. E. 569, 116 Am. St. Rep. 521, 9 Ann. Cas. 453. Besides, the testimony offered was on a point that was immaterial.

[9] It is urged that the district attorney, both in his opening and closing addresses, made improper and prejudicial remarks against the defendant. Some of the questions under this head have already been

discussed, and, without taking up in detail the remaining ones, it is sufficient to say that a careful examination of such addresses convinces me that the district attorney did not transgress the legitimate privileges of a prosecuting attorney in addressing a jury. These are stated by the court in People v. Doody, 172 N. Y. 165, 174, 175, 64 N. E. 807, 809, as follows:

"In the trial of a criminal case the district attorney is entitled to discuss before the jury all the facts and circumstances bearing upon the issue with the same freedom that is to be awarded to counsel in any case. He may not attempt to inject into the case facts or circumstances foreign to the issue or not within the scope of the evidence, but subject to these restrictions he is entitled to argue the case with the same freedom of speech that the courts concede to counsel generally in the trial of issues of fact before juries. 'The jury system would fail much more frequently than it now does if freedom of advocacy should be unduly hampered and counsel should be prevented from exercising within the four corners of the evidence the widest latitude by way of comment, denunciation or appeal in advocating his cause.' Per Andrews, J., in Williams v. Brooklyn Elev. R. R., 126 N. Y. 102, 103 [26 N. E. 1048]."

The case of People v. Fielding, 158 N. Y. 542, 53 N. E. 497, 46 L. R. A. 641, 70 Am. St. Rep. 495, relied on by the defendant, was an exceptional one, as there the prosecuting attorney went beyond the evidence and the bounds of reasonable moderation, which is not the case here.

[10] The final argument made on behalf of the defendant is that, the Senate having heard these charges and passed upon them and acquitted the defendant, its action is final and conclusive. It would be unfortunate if such were the law. But it is not the law. Even a judgment of impeachment and removal from office does not exempt the one impeached from indictment and punishment according to law, as article 6, § 13, of the Constitution expressly provides. So, too, article 13, § 2, declares official bribery and corruption to be a felony. The Constitution does protect members of the Legislature by declaring that "for any speech or debate in either house of the Legislature, the members shall not be questioned in any other place" (article 3, § 12), and makes each house the judge of the qualifications of its own members (article 3, § 10). The present case forcibly shows how unfortunate for society it would be if such constitutional immunity extended so far as is claimed on behalf of the defendant.

Complaint seems to be made that the conviction of the defendant is an encroachment by one independent department of the government upon the prerogatives of another. But there is no such encroachment. The defendant's counsel may be right in his claim that the determination of the Senate is conclusive upon the question of the defendant's qualifications to sit in that body. That determination the courts have not sought to reverse or in any wise affect. But in like manner that determination in no wise touches the right and duty of the courts to proceed in the customary way to exercise their power by impeachment and conviction and imprisonment, if that is the suitable punishment, and if such imprisonment prevents the attendance of the Senator at the sessions of the legislative body of which he has been found a fit

member, that consequence is only an incident of the performance by one governmental department of its constitutional functions and is not an invasion of the powers of another department.

As I have no doubt that the judgment should stand, the application for a certificate of reasonable doubt must be denied.